IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

JOHNNY BROWN, #110 326      *

       Plaintiff,        *

       v.            *        2:07-CV-1123-MHT
                                        (WO)

SIDNEY WILLIAMS, *et al.*,      *

       Defendants.        *

_____

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, Plaintiff, a state inmate currently incarcerated at the Limestone Correctional Facility in Harvest, Alabama, complains of adverse actions related to Defendants' decision to deny him parole in November 2007. Plaintiff names as defendants Sidney Williams, Nancy McCreary, and Robert Longshore who are or were members of the Alabama Board of Pardons and Paroles at the time the actions about which Plaintiff complains occurred.[1] Plaintiff's requests for declaratory and injunctive relief remain before the court.[2]

_____

[1] The court previously dismissed Plaintiff's request for monetary damages as well as his conspiracy claim against the named Defendants. The court also dismissed Plaintiff claims against the Alabama Board of Pardons and Paroles, VOCAL, Governor Riley, and Alabama Attorney General Troy King. (*See Doc. Nos. 7, 11.*)

[2] In *Wilkinson v. Dotson,* 544 U.S. 74 (2005), an inmate filed a 42 U.S.C. § 1983 action challenging the state procedures used to deny him parole. He claimed that the Ohio Parole Board used an improper set of guidelines in its decision making. *Id.* at 76-77. The *Wilkinson* Court held that the prisoner could pursue the claims under § 1983 because success for the inmate "means at most a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term." *Id.* at 82. Here, Plaintiff likewise challenges the procedures used by the Alabama Board of Pardons and Paroles to deny him parole.

In accordance with the  orders of the court, Defendants filed an answer,  special report, supplemental special report, and supporting evidentiary material in response to the allegations contained in the complaint.  The court then informed Plaintiff that Defendants' special report  may, at any time, be treated as a motion for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment. Plaintiff took advantage of the opportunity granted to file a response to the  special report filed by Defendants.  This case is now pending on Defendants' motion for summary judgment.  Upon consideration of such motion, the evidentiary materials filed in support thereof, and Plaintiff's opposition to the motion, the court concludes that Defendants' motion for summary judgment is due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' "  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th  Cir. 2007) (*per curiam*) (citation omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[3]  The party moving for summary judgment "always bears the

_____

[3]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic

initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with evidence beyond the pleadings, that a genuine issue material to each of his claims for relief exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail

---

changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578 (2006) (citation omitted). Consequently, to survive the properly supported motion for summary judgment filed in this case, Plaintiff is required to produce "sufficient evidence" which would be admissible at trial supporting his claims of various constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment..."). Hence, when a plaintiff fails to set forth specific facts

-4-

supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).   In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.   *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact.   *Beard*, 548 U.S. at 529, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).   Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.   In this case, Plaintiff has failed to demonstrate requisite genuine issues of material fact in order to preclude summary judgment.   *Matsushita*, 475 U.S. 574.

## II.  DISCUSSION

Plaintiff asserts that Defendants violated his constitutional rights during the parole consideration process related to his November 2006 parole hearing and the resulting denial

of parole issued on April 2, 2007.[4]  Specifically, Plaintiff complains that:

> 1. Defendants denied him due process during the parole review process by denying him proper discretionary review and treating him differently as compared to non-violent offenders.
>
> 2.  Defendants violated his right to equal protection because their decision to deny him parole was arbitrary and capricious where it was based on false information.
>
> 3.  Defendants violated the *Ex Post Facto* Clause of the Constitution by retroactively applying relevant administrative rules to alter the frequency of his future parole consideration dates from every three years to every five years.

(*Doc. No. 1 at pgs. 2-3.*)[5]

## A.  The Due Process Claim

Plaintiff maintains that Defendants deprived him of due process with respect to his parole consideration hearing held in November 2006.  Plaintiff's claims arising from an alleged lack of due process in the parole consideration process entitle him to no relief.

"The Alabama [parole] statute ... calls for discretionary rather than mandatory action

---

[4]The undisputed evidence before the court shows that Defendant Weatherly did not participate in the vote to deny Plaintiff's parole in April 2007.  (*Doc. No. 21, Exhs. A, C.*)  For ease of reference, the court will primarily refer to "Defendants" in addressing Plaintiff's claims.

[5] To the extent Plaintiff presents new claims for relief and/or additional theories of liability in his opposition to Defendants' dispositive motion, such claims are not properly before the court. *See Chavis v. Clayton County Sch. Dist.*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) ("Chavis advanced this contention in his brief to the district court in response to the defendants' motion for summary judgment. Chavis did not seek to amend his complaint to add a claim based on the asserted conduct, and the district court did not specifically address this contention . . . We do not regard this kind of claim as properly before us . . ."); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) (cited with approval in *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("As a final matter, Shanahan's attempt to amend his complaint by way of a footnote in his response to defendants' motion for summary judgment was properly denied by the district court. A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

on the part of the parole board.  The law directs the parole board to consider a number of factors in making their determination, which is a subjective rather than objective determination. It does not contain any language that mandates parole....  When the statute is framed in discretionary terms there is not a liberty interest created." *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982).  This court's review of the history of the Alabama parole statute indicates that from its inception the statute has been framed in discretionary terms. The law is well settled that "[t]he mere possibility of parole provides simply 'a hope that is not protected by due process....' *Greenholtz,* 442 U.S. at 11, 12, 96 S.Ct. at 2105, 2106 (1979)....  [Moreover], the Alabama parole statute frames the Parole Board's authority in discretionary terms, and thus does not create for Alabama prisoners a protected liberty interest in the expectation of parole.  *See Thomas v. Sellers,* 691 F.2d 487 (11th Cir. 1983)."

*Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir. 1987).

> Unless there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness.  *See Brown v. Lundgren*, 528 F.2d 1050 (5th Cir.), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976).  In *Staton v. Wainwright*, 665 F.2d 686 (5th Cir. 1982) (former Fifth Circuit decision), the court concluded that no liberty interest in parole was created by the Florida statutes. The court, therefore, rejected appellant's claim that his due process rights were violated when he did not receive an initial parole interview within the time required under the parole laws.  The analysis in *Staton* was adopted by the Eleventh Circuit in *Hunter v. Florida Parole and Probation Commission*, 674 F.2d 847 (11th Cir. 1982), where the court held that no due process violation could be shown through an allegation that the Florida Parole and Probation Commission improperly calculated a prisoner's "presumptive parole release date."

*Slocum v. Georgia State Board of Pardons and Paroles*, 678 F.2d 940, 942 (11th Cir. 1982).

Plaintiff does not possess a liberty interest in being granted parole that is protected by the Due Process Clause.  *Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991); *Ellard*, 824 F.2d at 941-942; *Thomas*, 691 F.2d at 488-489.  Thus, the procedural due process protections of the Fourteenth Amendment do not apply to either the parole decision making process, *Thomas*, *supra*, or the parole consideration process.  *Slocum*, 678 F.2d at 942 (failure to provide parole review within time required under parole laws or properly calculate presumptive date of release on parole does not constitute a violation of due process).  There is also no constitutional requirement that written reasons for the denial of parole  be given, *see O'Kelley v. Snow*, 53 F.3d 319, 322 (11th Cir. 1995) (Since the plaintiff "had no constitutional right to procedural due process protections, . . . [he] therefore . . . had no right to an explanation for departure from the parole guidelines."); *see, e.g., Irving v. Thigpen*, 732 F.2d 1215 (5th  Cir. 1984), and the Alabama parole statutes do not require that Plaintiff be furnished with reasons as to why the parole board decided to deny parole.  The failure to provide such information does not, therefore, implicate any constitutional right to which Plaintiff is entitled.

Federal courts no longer ascertain whether a state created a constitutionally protected liberty interest by parsing language of statutes and regulations to determine if the language was "of an unmistakably mandatory character" placing "substantive limitations on official discretion" but must instead look to the nature of the deprivation to determine if a state created a liberty interest.  *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995).  As explained previously, an Alabama inmate has no liberty interest in parole protected by the Due Process

Clause.  Although "States may under certain circumstances create liberty interests which are protected by the Due Process Clause[,] ... these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*.  "Since an inmate is normally incarcerated in prison, [the plaintiff's remaining in prison while awaiting parole consideration] did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest." *Asquith v. Department of Corrections*, 186 F.3d 407, 412 (3rd Cir. 1999).

Nevertheless, even though there is no liberty interest involved, a parole board may not engage in "flagrant or unauthorized action." *Thomas*, 691 F.2d at 489.  Defendants maintain that they acted in accordance with state and federal law in the parole consideration process in determining Plaintiff's suitability for release on parole.  (*Doc. No. 21, Exhs. B, C, D*.)  These efforts demonstrate reasonable and appropriate actions, *Hendking v. Smith*, 781 F.2d 850, 853 (11th Cir. 1986), rationally related to the legitimate state interest of ensuring that only those inmates best suited for parole are actually granted this privilege.  *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526 (11th Cir. 1988).  Plaintiff has failed to present any evidence indicating arbitrary or capricious action on the part of Defendants.  Consequently, the motion for summary judgment with respect to Plaintiff's due process claims is due to be granted in favor Defendants.

**B. The Equal Protection Claim**

Plaintiff asserts that Defendants violated his right to equal protection where they failed to provide him the same protections afforded to "similar incarcerated prisoners being reviewed for parole" based on their arbitrary and capricious decision to deny him parole in 2007. (*Doc. No. 1 at pg. 3.*) Defendants deny that they acted in violation of Plaintiff's equal protection rights. (*Doc. No. 21, Exhs. B, C, D.*) Rather, they maintain that every action undertaken in the parole consideration process occurred due to their efforts to comply with applicable state and federal law. Defendants Williams and Longshore assert that the decision to deny Plaintiff parole resulted from their inability to be reasonably satisfied that Plaintiff could remain at liberty without violating the law and their belief that his release was not compatible with the welfare of society. (*Id., Exhs. B, D.*)

In order to present a claim cognizable under the Equal Protection Clause, "a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race. *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir.1986) (per curiam)." *Jones v. Ray*, 279 F.3d 944, 946-947 (11th Cir. 2001). Moreover, to establish an equal protection violation, a plaintiff must demonstrate the existence of intentional or purposeful discrimination. *Whitus v. Georgia*, 385 U.S. 545, 550 (1967); *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993); *E & T Realty v. Strickland*, 830 F.2d 1107, 1113-1114 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988); *Village of Arlington Heights v. Metro. Housing Development*

-11-

*Corp.*, 429 U.S. 252, 265-266 (1977).  "Mere error or mistake in judgment ... does not violate the equal protection clause.  There must be intentional discrimination [by the defendants]....  Even arbitrary administration of [parole regulations], without purposeful discrimination, does not violate the equal protection clause."  *E & T Realty*, 830 F.2d at 1114 (citations omitted); *McCleskey v. Kemp*, 481 U.S. 279, 292-293 (1987) (simple disparity of treatment between individuals of different races is  insufficient to establish discrimination).  "The requirement of intentional discrimination prevents plaintiffs from bootstrapping all misapplications of state [rule and regulations] into equal protection claims.  'Probably no law contrived by man for his own governance ever has had or will be enforced uniformly and without exception.  But the Constitution does not demand perfection.'"  *E & T Realty*, 830 F.2d at 1114 (citations omitted).  Consequently,

> "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Arlington Heights*, 429 U.S. at 265, 97 S.Ct. 555.  Indeed, it is well established that proving intent to discriminate is the essential element of an equal protection claim. *See, e.g.,*; *Hernandez v. New York*, 500 U.S. 352, 359-60, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) ("A court addressing [an equal protection claim] must keep in mind the fundamental principle that 'official action will not be held unconstitutional solely because it results in a racially disproportionate impact....  Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.'" (omission in original) (quoting *Arlington Heights*, 429 U.S. at 264-265, 97 S.Ct. 555)); *Washington v. Davis,* 426 U.S. 229, 240, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Johnson v. Bush,* 405 F.3d 1214, 1218 (11th Cir.2005); *Citizens Concerned About Our Children v. Sch. Bd.,* 193 F.3d 1285, 1294 (11th Cir.1999); *Elston v. Talladega County Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir.1993); *Mencer v. Hammonds*, 134 F.3d 1066, 1070 (11th Cir.1998); *Parks v. City of Warner Robins*, 43 F.3d 609, 616 (11th Cir. 1995).

*Holton v. City of Thomasville School District*, 425 F.3d 1325, 1348-1349 (11th Cir. 2005).

-12-

"'Discriminatory purpose[]' ... implies more than intent as volition or intent as awareness of consequences....  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).   In a case such as this one, where Plaintiff challenges actions of state parole officials, exceptionally clear proof of discriminatory intent is required. *Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).  Where a plaintiff presents no evidence of purposeful discrimination, the law requires entry of summary judgment in favor of the defendants. *McCleskey*, 481 U.S. at 292; *E & T Realty*, 830 F.2d at 1115.

Since this case is before the court on a properly supported motion for summary judgment from Defendants, Plaintiff bears the burden of producing some evidence to show that he was the victim of intentional discrimination. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Purposeful discrimination can be shown either by direct evidence, *i.e.*, admissions of the defendant, or indirectly by way of substantially probative circumstantial evidence. *Arlington Heights*, 429 U.S. at 265-266. A plaintiff, however, cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. at 252.  Instead, the law is clear that a plaintiff must present significant probative evidence showing the existence of a genuine issue of material fact to preclude summary judgment in favor of the defendants. *Id*. at 249.

Plaintiff alleges that Defendants denied him fair parole consideration while affording such to other similarly situated inmates.  Defendants deny that they undertook any action in Plaintiff's parole consideration process based on a constitutionally impermissible reason. They further argue that denial of parole was based on the determination that Plaintiff's release on parole was not compatible with the welfare of society.  Plaintiff has utterly and completely failed to present evidence, significantly probative or otherwise, that any constitutionally impermissible factor constituted a motivating factor in the actions of Defendants about which he complains.  The allegations presented by Plaintiff do not warrant an inference of discriminatory intent as the showing of a disparate impact upon inmates is insufficient to demonstrate an equal protection violation.  *E & T Realty*, 830 F.2d at 1114-1115; *Horner v. Kentucky High School Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir. 1994). Additionally, the arbitrary application of administrative rules does not run afoul of the Constitution. *E & T Realty*, 830 F.2d at 1114.  Plaintiff simply makes the conclusory legal assertion that the actions undertaken by Defendants in his parole consideration process resulted from discrimination in comparison to other similarly incarcerated inmates who Plaintiff appears to perceive received more favorable treatment.  Thus, he fails to meet his evidentiary burden as he has offered no evidence identifying any other similarly situated inmate who received more favorable treatment from Defendants, *Brunskill v. Boyd*, 141 Fed.Appx. 771, 776 (11th Cir. 2005), or that Defendants subjected him to adverse treatment based on some constitutionally impermissible reason.  Moreover, it is clear from the undisputed evidentiary materials that the parole board members refused to grant Plaintiff

-14-

parole based on their determination, after reviewing his record, that he did not warrant release into society.  In light of the foregoing, summary judgment is due to be granted in favor of Defendants on this claim.

## C.  False Information

To the extent Plaintiff alleges that Defendants relied on false information to deny him parole, he is likewise entitled to no relief.  Defendants do not admit that the information utilized in their  decision-making process is false and deny any knowing reliance on false information.  (*Doc. No. 22, Exhs. B, C*.)  While *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991) establishes a constitutional claim for the knowing use of false information by parole officials, the instant case is controlled by *Slocum*, 678 F.2d 940.  In *Slocum*, the Court held that prisoners do not state a due process claim by merely asserting that erroneous information exists in their prison files.  Moreover, "prisoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim." *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001).

Plaintiff merely asserts that Defendants based the denial of parole "absent 1st hand knowledge, visits, or otherwise to authenticate, verify, said assertions made by an adverse party." (*Doc. No. 1 at pg. 3*.)  This does not state a claim for relief and Defendants are, therefore, entitled to summary judgment.

## D.  The *Ex Post Facto* Claim

Plaintiff complains that the set-off of his parole consideration date for five years upon retroactive application of amended administrative regulations implicates the protections

guaranteed by the *Ex Post Facto Clause* because prior regulations allowed parole consideration at more frequent intervals.  The *Ex Post Facto* Clause bars "enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249 (2000).  An amended law or regulation must create a significant risk of increasing the punishment imposed upon an inmate in order for the amendment to run afoul of this constitutional provision.  *Garner,* 529 U.S. at 255.  Decisions with respect to whether a parole regulation violates the *Ex Post Facto* Clause when applied to inmates entitled to more frequent parole consideration at the time they committed their crimes must be made on a case-by-case basis.  *Harris v. Hammonds*, 217 F.3d 1346, 1350 (11th Cir. 2000).  In making these decisions, a court is required to consider evidence of the general operation of the parole system and any other evidence produced by a prisoner in support of his assertion that the regulation "'as applied to his sentence,' created a significant risk of increasing his punishment."  *Harris*, 217 F.3d at 1350 (quoting *Garner v. Jones,* 529 U.S. 244, 255, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000)); *Jones v. Ray*, 279 F.3d 944, 946 -947 (11th Cir. 2001).

The *Garner* Court addressed whether an amended rule increasing parole consideration hearings from every three years to every eight years in Georgia violated the *Ex Post Facto* Clause.  The Court determined that extending the time for a scheduled parole consideration hearing did not prevent the exercise of discretion by the Georgia Board of Pardons and Paroles during the period between parole reviews, because the agency's policies permit the Board, in its discretion, to schedule expedited reviews in the event of a change in

-16-

circumstance or new information.  *Garner*, 529 U.S. at 256.

A determination of whether retroactive application of a particular change in a law or regulation governing parole respects the prohibition of *ex post facto* legislation is often a question of particular difficulty when the discretion vested in the parole board is taken into account.  *Id.* at 249.  In deciding whether a parole regulation prevents a parole board's exercise of discretion, the court may consider the implementing regulations, the statutory structure and the board's representations regarding its operations.  *Id.* at 254.  "The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience."  *Id.* at 253.

Alabama law gives the Alabama Board of Pardons and Paroles broad discretion in determining whether an inmate should be granted parole, *see* § 15-22-26*, Ala.Code 1975*, "and when and under what conditions" parole will be granted, *see* § 15-22-24(a).  Applicable state law also requires that the parole board consider the public interest in every case.  *Ala. Code* § 15-22-26.  This unconditional discretion, however, does not displace the protections of the *Ex Post Facto* Clause.  *Garner*, 529 U.S. at 253.

The rules and regulations governing the frequency of parole consideration dates are found in the operating procedures for the Alabama Board of Pardons and Paroles.[6]  In 2004 the parole board amended its rules and regulations. (*See Doc. No. 21, Exh. E*.)  Article 6, § 11, *Rules, Regulations and Procedures of the Board of Pardons and Paroles*, vests the Board

_____

[6]Available at www.pardons.state.al.us.

with discretion to determine whether to set the case for reconsideration and, if reconsideration is allowed, "when the case shall next be docketed for consideration, not to exceed five years."[7]   Article 2, § 7, provides that, if the Board "scheduled the next consideration three years or more after denial [of parole] . . ., the [Review] Committee may consider earlier scheduling, but such review shall not begin earlier than eighteen months after the Board has denied or revoked parole."  (*Id.; see also Doc. No. 21, Exh. E.*) The opportunity for an expedited parole review is likewise available to qualified inmates.  Article 2, § 1, provides that "[s]uch a rescheduling may be granted only for good cause shown and circumstances bearing on his probability to succeed on parole, not merely because the prisoner is following the rules in prison."  (*Id.*)  Thus, the rule changes are designed to facilitate better exercise of the parole board's discretion.  *See Garner*, 529 U.S. at 254-255.

Changing the frequency of parole consideration dates from three years to five years does not extend the term of imprisonment imposed upon Plaintiff nor increase the level of risk that he will serve a longer term of imprisonment.  Specifically, prior to this change, the parole board never guaranteed Plaintiff that he would be unconditionally released before completion of his life sentence.  Additionally, eighteen months after a denial of parole Plaintiff has the opportunity under the current regulation to submit information about changed circumstances bearing on his suitability for parole and could be scheduled for consideration at an earlier date.  Thus, even if risk of an increased term of incarceration

---

[7]*See FN 6.*

develops in Plaintiff's case, he may, upon a showing of "good cause ... and circumstances bearing on his probability to succeed on parole," seek an earlier review before the 5-year interval expires.  (*See Doc. No. 21, Exh. E - Article 2, § 1*.)

Plaintiff has presented no evidence and the court is unaware of any evidence which demonstrates that the regulations at issue create a significant risk of increased punishment for Plaintiff.  Moreover, Plaintiff possesses the ability to petition the parole board for an earlier parole consideration date.  Based on the foregoing, the court concludes that the change about which Plaintiff complains did not lengthen his actual term of imprisonment.  Thus, Plaintiff's challenge to the increase in time between parole consideration dates does not rise to the level of a constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action.  *Garner*, *supra*.  Defendants are due to be granted summary judgment on this claim.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (*Doc. No. 21*) be GRANTED.

2. Judgment be entered in favor of Defendants and against Plaintiff.

3. The costs of this proceeding be taxed against Plaintiff.

4. This case be DISMISSED with prejudice.

It is further

ORDERED that  on or before **May 3, 2010** the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate

Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 19th day of April, 2010.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE